JULIA DWYER

*v.*

MICHAEL O'CONNOR.

*Opinion filed December 16, 1902.*

TRUSTS—*when a party is entitled to conveyance of property purchased with his funds.* One who entrusts an amount of money to another for safe keeping is entitled to have the title of property purchased with the trust fund; and if the latter admits the money originally belonged to the former, clear and satisfactory proof is necessary to make out a gift thereof to such apparent trustee.

APPEAL from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

JOHN R. GEARY, for appellant.

JOHN C. KING, and WILLIAM J. KING, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is a bill in chancery filed by the appellee, in the superior court of Cook county, to compel the appellant to convey to him certain premises located in the city of Chicago, known as No. 5214 May street. A hearing was had in open court and a decree was entered finding the premises to be the property of the appellee, and directing the appellant to convey the same to him within twenty-five days, and upon a failure so to do that the master in chancery make such conveyance, and that the appellant deliver to the appellee the abstract of title to said premises,—from which decree she has prosecuted an appeal to this court.

The amended bill alleges that in the month of December, 1901, the appellee was the owner and possessed of the sum of $1500 in cash; that in said month he delivered the same to the appellant for safe keeping, to be returned to him on demand; that he had made demand of appellant that she return to him said sum of money, but that she had failed and refused to return the same and claimed to be the owner thereof; that on February 3, 1902, the appellant, without the consent of the appellee, purchased through one Julia M. Fisher, her daughter, for the sum of $1250, the premises in question, and paid for the same with the money of the appellee and took title thereto in her own name; that after said purchase was made he requested the appellant to convey said premises to him, but she refused and still refuses so to do; that on March 8, 1902, the appellee went into possession thereof and now is in possession of said premises.

The testimony introduced on behalf of the appellee shows that he is sixty years of age, and a cripple; that prior to December 1, 1901, he resided in the city of New York, where he had lived and been engaged in business in a small way for thirty-five years; that the appellant is his sister; that she resided in the city of Chicago; that they had not seen each other for a period of thirty-three years prior to the month of October, 1901; that in the month of December, 1900, his wife died, and that on September 23, 1901, he wrote to the appellant, requesting her to come to the city of New York and become his house-keeper, and sent her $100 to pay the expenses which she might incur in her removal to that city; that soon thereafter appellant and her daughter, Maggie Dwyer, who was about twenty-five years of age, went from Chicago to the city of New York and took up their abode with the appellee, where they remained for about six weeks; that during their stay in New York City appellee gave to the appellant $200; that about the first of December following, the appellant, her daughter and appellee

determined to remove to Chicago; that appellee had in a savings bank in New York City about $1300, which he drew out and entrusted to the appellant for safe keeping; that on their arrival in Chicago the money delivered to appellant by appellee was placed in the safety deposit box of Julia M. Fisher, at whose house appellee and appellant and her daughter remained for a time; that subsequent to their arrival in Chicago the appellee asked appellant for a return of his money; that she refused to return the same and claimed to be the owner thereof; that in February, 1902, Julia M. Fisher purchased the premises in question, paid for the same out of the money of appellee and took title thereto in her own name; that shortly thereafter she conveyed the same to her mother, the appellant; that appellee objected to the purchase, but that after the purchase was completed he insisted to appellant that the title to the premises should be placed in him but that appellant refused to convey the same to him; that the appellant, her daughter Maggie and the appellee reside in the cottage located upon the premises.

The appellant admitted the receipt of the money from appellee, but testified that he gave the same to her, and claimed to be the owner thereof, and that appellee consented to the purchase of the premises therewith and that the title be taken in the name of the appellant. The chancellor heard appellee and appellant and her daughter Maggie testify, who were the only persons present when the money was delivered to the appellant, and saw fit to believe the appellee rather than the appellant and her daughter, and from an examination of this record we cannot say that it is manifest that error was committed in so doing. The appellant having admitted that the money was originally the property of appellee, she was bound to make out a gift thereof to her by clear and satisfactory proof. This she failed to do, and it being conceded that the premises in question were purchased with the money which was placed in the hands of appellant

by appellee, we think the court did not err in decreeing that appellant convey the same to appellee.

At the time the appellant and her daughter went to New York City they had but little property,—not to exceed in amount $150. The appellant had no means of support, being a widow over sixty years of age, except the wages of her daughter Maggie, which did not exceed $8 per week. The appellee gave her $100 to pay her expenses to New York City from Chicago, and $200 while in the former city. The $1300 drawn from the bank and entrusted to her comprised appellee's entire estate, and it seems to us very improbable that he should have given his entire estate to the appellant, and thereby made himself a pauper and entirely dependent upon one who he knew had no property and no income of her own, or that he should have consented that his entire estate be invested in a house and lot and the title thereto taken in the name of appellant. From his testimony he seems to be a man of ordinary intelligence and of some business experience, and he must have known if the title to the property was taken in the name of appellant, in case of her death it would descend to the children of appellant and not to him, and he be left thereby entirely destitute. Appellant testified she was to take care of the appellee the balance of his life in consideration of the gift to her by him of said money. According to appellant's testimony such agreement rested only in parol, and it was denied by the appellee. While her statement is corroborated by her daughter, we do not think such agreement proven.

We are of the opinion the court rightfully found that the $1300 delivered to appellant was entrusted to her by the appellee for safe keeping and was not delivered to her as a gift, and properly decreed that she convey to appellee the premises purchased with a part of said fund. The decree will therefore be affirmed.

*Decree affirmed.*